1  CATHERINE A. CONWAY, SBN 98366
     cconway@gibsondunn.com
2  TIFFANY PHAN, SBN 292266
     tphan@gibsondunn.com
3  NASIM KHANSARI, SBN 320719
     nkhansari@gibsondunn.com
4  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
5  Los Angeles, CA  90071-3197
   Telephone: 213.229.7000
6  Facsimile:  213.229.7520

7  Attorneys for Defendants
   Owens Corning Insulating Systems, LLC and
8  Owens Corning Sales, LLC

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| MARCELL NEWHOUSE, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OWENS CORNING INSULATING SYSTEMS, LLC, a Delaware limited liability company; OWENS CORNING SALES, LLC, a Delaware limited liability company; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO.<br><br>**DEFENDANTS OWENS CORNING INSULATING SYSTEMS, LLC AND OWENS CORNING SALES, LLC'S NOTICE OF REMOVAL OF CLASS ACTION**<br><br>(Santa Clara Superior Court Case No. 22CV397048)<br><br>Action Filed:    April 19, 2022<br>Trial Date:      None Set |

**TABLE OF CONTENTS**

Page

I.   TIMELINESS OF REMOVAL ........................................................................................... 1

II.  SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL ............................... 1

    A.   The Proposed Class Consists of More than 100 Members ............................................ 3

    B.   Owens Corning and Plaintiff Are Not Citizens of the Same State ............................... 4

    C.   The Amount in Controversy Exceeds $5 Million ......................................................... 5

        1.   Plaintiff's Overtime, Meal Break, Rest Break, and Waiting Time Penalty Claims Alone Place More than $5 Million in Controversy .............................. 6

        2.   Plaintiff's Request for Attorneys' Fees Results in at Least Another $1 Million in Controversy ................................................................................ 12

    D.   Owens Corning Has Satisfied Its Burden Under CAFA and No Exception Is Applicable ..................................................................................................................... 14

III. THIS COURT HAS JURISDICTION AND REMOVAL TO THIS COURT IS PROPER ........................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arias v. Residence Inn by Marriott*,
  936 F.3d 920 (9th Cir. 2019) ............................................................................................ 5, 6, 12

*Arreola v. Finish Line*,
  2014 WL 6982571 (N.D. Cal. Dec. 9, 2014) ........................................................................ 7, 10

*Aryeh v. Canon Bus. Sols., Inc.*,
  55 Cal. 4th 1185 (2013) ............................................................................................................ 8

*Aubry v. Goldhor*,
  201 Cal. App. 3d 399 (Ct. App. 1988) .................................................................................... 11

*Ayala v. Cox Auto., Inc.*,
  2016 WL 6561284 (C.D. Cal. Nov. 4, 2016) ............................................................................ 4

*Barcia v. Contain-A-Way, Inc.*,
  2009 WL 587844 (S.D. Cal. Mar. 6, 2009) ............................................................................. 12

*Campbell v. Vitran Exp., Inc.*,
  471 F. App'x 646 (9th Cir. 2012) ....................................................................................... 6, 10

*Dart Cherokee Basin Op. Co. v. Owens*,
  574 U.S. 81 (2014) ................................................................................................................ 5, 6

*Garza v. Brinderson Constructors, Inc.*,
  178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) ............................................................................ 10

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ................................................................................................ 12

*Hertz Corp. v. Friend*,
  559 U.S. 77 (2010) .................................................................................................................... 5

*Hopson v. Hanesbrands Inc.*,
  2008 WL 3385452 (N.D. Cal. Aug. 8, 2008) ......................................................................... 12

*Johnson v. Columbia Props. Anchorage, LP*,
  437 F.3d 894 (9th Cir. 2006) ................................................................................................ 4, 5

*Kantor v. Wellesley Galleries, Ltd.*,
  704 F.2d 1088 (9th Cir. 1983) .................................................................................................. 4

*Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*,
  199 F. Supp. 2d 993 (C.D. Cal. 2002) ...................................................................................... 6

*Korn v. Polo Ralph Lauren Corp.*,
  536 F. Supp. 2d 1199 (E.D. Cal. 2008) .................................................................................... 6

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

*LaCross v. Knight Transp. Inc.*,
  775 F.3d 1200 (9th Cir. 2015) ............................................................................................... 5

*Lewis v. Verizon Commc'ns.*,
  627 F.3d 395 (9th Cir. 2010) ................................................................................................. 5

*Lucas v. Kors*,
  2018 WL 2146403 (C.D. Cal. May 8, 2018) ....................................................................... 12

*Mamika v. Barca*,
  68 Cal. App. 4th 487 (1998) ................................................................................................ 11

*In re Pacific Enterprises Securities Litigation*
  47 F.3d 373 (9th Cir. 1995) ................................................................................................. 13

*Quintana v. Claire's Stores, Inc.*,
  2013 WL 1736671 (N.D. Cal. Apr. 22, 2013) ....................................................................... 7

*Ray v. Wells Fargo Bank, N.A.*,
  2011 WL 1790123 (C.D. Cal. May 9, 2011) ......................................................................... 7

*Rippee v. Boston Mkt. Corp.*,
  408 F. Supp. 2d 982 (S.D. Cal. 2005) ................................................................................... 6

*Salter v. Quality Carriers, Inc.*,
  974 F.3d 959 (9th Cir. 2020) ............................................................................................ 5, 6

*Serrano v. 180 Connect, Inc.*,
  478 F.3d 1018 (9th Cir. 2007) ............................................................................................. 14

*Singer v. Becton Dickinson and Co.*,
  2010 WL 2196104 (S.D. Cal. June 1, 2010) ....................................................................... 13

*Standard Fire Ins. Co. v. Knowles*,
  568 U.S. 588 (2013) ............................................................................................................... 5

*State Farm Mut. Auto Ins. Co. v. Dyer*,
  19 F.3d 514 (10th Cir. 1994) ................................................................................................. 4

**Statutes**

28 U.S.C. § 84 ............................................................................................................................ 15

28 U.S.C. § 1332 ........................................................................................................ 1, 2, 3, 4, 5

28 U.S.C. § 1441 ................................................................................................................ 1, 3, 15

Cal. Bus. & Prof. Code § 17208 .................................................................................................. 8

Cal. Civ. Proc. Code § 338 .......................................................................................................... 8

# TABLE OF AUTHORITIES
*(continued)*

Page(s)

Cal. Lab. Code § 203 ............................................................................................................... 11

Cal. Lab. Code § 226.7 ............................................................................................................. 9

Cal. Lab. Code § 510 ................................................................................................................ 7

Cal. Lab. Code § 512 ................................................................................................................ 9

**TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, AND TO PLAINTIFF MARCELL NEWHOUSE AND HIS COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C §§ 1332(d), 1453, and 1711, Defendants Owens Corning Insulating Systems, LLC and Owens Corning Sales, LLC hereby remove to the United States District Court for the Northern District of California the above-captioned state court action, originally filed as Case No. 22CV397048 in Santa Clara County Superior Court, State of California. Removal is proper on the following grounds:

## I. TIMELINESS OF REMOVAL

1. Plaintiff Marcell Newhouse ("Plaintiff") filed a putative Class Action Complaint against Owens Corning Insulating Systems, LLC and Owens Corning Sales, LLC (collectively, "Owens Corning") in Santa Clara County Superior Court, State of California, Case No. 22CV397048, on April 19, 2022. Pursuant to 28 U.S.C. § 1446(a), true and correct copies of the (a) Summons, (b) Class Action Complaint, (c) Civil Case Cover Sheet, (d) Civil Lawsuit Notice, (e) Court Order Deeming Case Complex and Staying Discovery and Responsive Pleading Deadline, and (f) Proof of Service of Summons and Class Action Complaint to Owens Corning Insulating Systems, LLC and Owens Corning Sales, LLC, are attached as Exhibits A–F to the Declaration of Tiffany Phan ("Phan Decl.") filed concurrently with this notice. There are no other filings on the docket for Case No. 22CV397048.

2. Plaintiff served Owens Corning Insulating Systems, LLC and Owens Corning Sales, LLC by process server on April 27, 2022. *See* Phan Decl. ¶ 7, Ex. F. This notice of removal is timely because it is filed within 30 days after service was completed on April 27, 2022. 28 U.S.C. § 1446(b).

## II. SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

3. Removal is proper pursuant to 28 U.S.C. §§ 1441 and 1453 because this Court has subject matter jurisdiction over this action and all claims asserted against Owens Corning pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d).

4. CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action"

under CAFA because it was brought under California Code of Civil Procedure section 382, California's state statute or rule authorizing an action to be brought by one or more representative persons as a class action.  *See* 28 U.S.C. § 1332(d)(1)(B); *see also* Phan Decl., Ex. B, Compl. ¶ 1.

5. Plaintiff asks the Court "that this action be certified as a class action."  *See* Phan Decl., Ex. B, Compl., Prayer for Relief.  Plaintiff seeks to represent various classes, including "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California." *Id.*, Compl. ¶ 14.

6. Plaintiff also seeks to represent various sub-classes, including: (1) "[a]ll class members who received overtime compensation at a rate lower than their respective regular rate of pay because Defendants failed to include all non-discretionary bonuses or other incentive-based compensation in the calculation of the regular rate of pay for overtime pay purposes"; (2) "[a]ll class members who were required by Defendants to stay on Defendants' premises for rest breaks"; and (3) "[a]ll class members who earned non-discretionary bonuses or other incentive-based compensation, which was not used to calculate the amount of the meal break or rest break penalty/premium payment." *Id.*

7. In his Complaint, Plaintiff alleges ten causes of action against Owens Corning: (1) violation of California Labor Code §§ 510 and 1198 (unpaid overtime); (2) violation of California Labor Code §§ 226.7 and 512(a) (unpaid meal period premiums); (3) violation of California Labor Code § 226.7 (unpaid rest period premiums); (4) violation of California Labor Code §§ 1194, 1197, and 1197.1 (unpaid minimum wages); (5) violation of California Labor Code §§ 201 and 202 (final wages not timely paid); (6) violation of California Labor Code § 204 (wages not timely paid during employment); (7) violation of California Labor Code § 226(a) (non-compliant wage statements); (8) violation of California Labor Code § 1174(d) (failure to keep requisite payroll records); (9) violation of California Labor Code §§ 2800 and 2802 (unreimbursed business expenses); and (10) violation of California Business & Professions Code § 17200, et seq.

8. Among other things, Plaintiff alleges that putative class members are entitled to unpaid wages, premiums for missed meal and rest breaks, unreimbursed business expenses, statutory penalties

for late payment of wages, inaccurate wage statements, and willful failure to maintain accurate and complete records under the California Labor Code, interest, and attorneys' fees and costs. *Id.*, Compl., Prayer for Relief.

9. Removal of a class action is proper if: (1) there are at least 100 members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different than any defendant; and (3) the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs. *See* 28 U.S.C. §§ 1332(d), 1441.

10. Owens Corning denies any liability in this case, both as to Plaintiff's individual claims and as to his putative class claims. Further, Owens Corning expressly reserve all rights to oppose class certification and contest the merits of all claims asserted in the Complaint. However, for purposes of the jurisdictional requirements *for removal only*, the allegations in Plaintiff's Complaint identity a putative class of more than 100 members and put in controversy, in the aggregate, an amount that exceeds $5 million. *See* 28 U.S.C. § 1332(d).

**A. The Proposed Class Consists of More than 100 Members**

11. Based on Plaintiff's proposed class definition, this action satisfies CAFA's requirements that the putative class contains at least 100 members. *See* 28 U.S.C. § 1332(d)(5)(B).

12. Plaintiff's proposed class consists of "[a]ll current and former hourly-paid or non-exempt employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment and who reside in California." Phan Decl., Ex. B, Compl. ¶ 14. Thus, the alleged putative class includes all of Defendants' California non-exempt employees from April 19, 2018 through the present. Plaintiff alleges that he worked as "[a]n hourly-paid, non-exempt employee, from approximately December 2013 to approximately February 2021, in the State of California, County of Santa Clara." Declaration of Thomas Huth ("Huth Decl.") ¶ 4.a; Phan Decl., Ex. B, Compl. ¶ 19. According to Owens Corning's records, there were at least 516 individuals who worked as hourly, non-exempt employees at Owens Corning's Santa Clara plant from April 19, 2018 to April 19, 2022. Huth Decl. ¶ 4.c.

13. Thus, based on Plaintiff's allegations, there are *at least* 516 putative class members, which is a conservative (and underinclusive) estimate because it (1) takes the entire universe of job titles held by Owens Corning's employees throughout California – which Plaintiff purports to represent (Phan Decl., Ex. B, Compl. ¶ 14) – and filters it down to just non-exempt employees who worked at Defendants' Santa Clara plant in California where Plaintiff worked, and (2) excludes Owens Corning's employees in California who have been hired since April 19, 2022. Thus, the putative class contains substantially more than 100 class members.

14. Accordingly, while Owens Corning denies that class treatment is permissible or appropriate, the proposed class satisfies CAFA's requirement that it consists of more than 100 members.

**B. Owens Corning and Plaintiff Are Not Citizens of the Same State**

15. Under CAFA's minimum diversity of citizenship requirement, the plaintiff or any member of the putative class must be a citizen of a different state from any defendant. *See* 28 U.S.C. § 1332(d)(2)(A).

16. A person is a citizen of a state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A party's residence is prima facie evidence of his or her domicile. *Ayala v. Cox Auto., Inc.*, 2016 WL 6561284, at * 4 (C.D. Cal. Nov. 4, 2016) (citing *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)). Plaintiff alleges that he "is an individual residing in the State of California, County of Santa Clara." Phan Decl., Ex. B, Compl. ¶ 5. Plaintiff is therefore considered a citizen of California for purposes of removal under CAFA. *See Ayala*, 2016 WL 6561284, at *4.

17. A corporation is a citizen of its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1). "[A]n LLC is a citizen of every state of which its owners/members are citizens." *Johnson v. Columbia Props. Anchorage, LP*, 437 F.3d 894, 899 (9th Cir. 2006). Owens Corning Insulating Systems, LLC and Owens Corning Sales, LLC are limited liability companies organized under the laws of Delaware and have their principal place of business in Toledo, Ohio. Huth Decl., ¶ 3. Owens Corning Insulating Systems, LLC and Owens Corning Sales, LLC have no members in California. *Id*.

18.  The Supreme Court has interpreted the phrase "principal place of business" in 28 U.S.C. section 1332 (c)(1) to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," i.e., its "nerve center," which "should normally be the place where the corporation maintains its headquarters–provided that the headquarters is the actual center of direction, control, and coordination." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). These entities' headquarters, which are located in Ohio, constitute their "nerve center[s]" under the test adopted in *Hertz* because their high-level officers oversee each corporation's activities from that state. *See* Huth Decl. ¶ 3. As such, Owens Corning Insulating Systems, LLC and Owens Corning Sales, LLC are citizens of Delaware and Ohio. *See* 28 U.S.C. § 1332(c)(1); *Johnson*, 437 F.3d at 899.

19.  Accordingly, Plaintiff and Owens Corning are citizens of different states, and CAFA's minimal diversity requirement is met. 28 U.S.C. § 1332(d)(2)(A).

**C.  The Amount in Controversy Exceeds $5 Million**

20.  CAFA requires that the amount in controversy in a class action exceed $5 million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). In calculating the amount in controversy, a court must aggregate the claims of all individual class members. *Id.* § 1332(d)(6).

21.  "[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Op. Co. v. Owens*, 574 U.S. 81, 89 (2014). To satisfy this burden, a defendant may rely on a "reasonable" "chain of reasoning" that is based on "reasonable" "assumptions." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201–02 (9th Cir. 2015). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (internal quotation marks and citations omitted). That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, *not a prospective assessment of defendant's liability*." *Lewis v. Verizon Commc'ns.*, 627 F.3d 395, 400 (9th Cir. 2010) (emphasis added). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy

allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 974 U.S. at 87. Importantly, plaintiffs seeking to represent a putative class cannot "bind the absent class" through statements aimed to limit their recovery in an effort to "avoid removal to federal court." *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595–96 (2013).

22. Moreover, in assessing whether the amount in controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). In other words, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (quoting *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

23. As Owens Corning will demonstrate below, the amount in controversy is well over $5 million only taking into account Plaintiff's overtime, meal and rest break, and waiting time penalty claims, which represent only four of Plaintiff's ten causes of action, exclusive of attorneys' fees. Including attorneys' fees, the amount in controversy well surpasses the $5 million minimum required under CAFA.

        1. **Plaintiff's Overtime, Meal Break, Rest Break, and Waiting Time Penalty Claims Alone Place More Than $5 Million in Controversy**

24. Owens Corning reserves the right to present evidence establishing the amount placed in controversy by each of Plaintiff's claims should Plaintiff challenge whether the jurisdictional amount-in-controversy threshold is satisfied. *See Dart Cherokee*, 574 U.S. at 87–89; *see also Salter*, 974 F.3d at 964 (holding that only a "factual attack" that "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings" requires the removing defendant to "support her jurisdictional allegation with competent proof" (internal quotation marks omitted)). "[W]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied." *Arias*, 936 F.3d at 924. But for present

purposes, it is sufficient to note that Plaintiff's claim regarding overtime, meal and rest breaks, and waiting time penalties alone places over $5 million in controversy.

### a. Plaintiff's Overtime Claim Places More Than $1.8 Million in Controversy

25. California Labor Code section 510 provides that "[a]ny work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." Cal. Lab. Code § 510(a).

26. Plaintiff alleges that "during the relevant time period, Plaintiff and other class members worked in excess of eight (8) hours in a day, and/or in excess of forty (40) hours in a week" and that Owens Corning "intentionally and willfully failed to pay overtime wages owed to Plaintiff and the other class members." Phan Decl., Ex. B, Compl. ¶¶ 53–54. Plaintiff also alleges that "Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees" and that "[t]his pattern and practice involved, *inter alia*, failing to pay them for all regular and/or overtime wages earned." *Id.*, Compl. ¶ 26.

27. Based on these allegations, it is reasonable to assume that Plaintiff will contend that Owens Corning allegedly failed to pay at least one hour of overtime per week to each putative class member for each week in which he or she was employed with Owens Corning. While Owens Corning does not agree that any overtime is owed, district courts have routinely accepted one hour of overtime per week as a reasonable assumption for removal purposes in light of the allegations in Plaintiff's complaint. *See, e.g.*, *Ray v. Wells Fargo Bank, N.A.*, 2011 WL 1790123, at *7–8 (C.D. Cal. May 9, 2011) (affirming that an assumption of one hour per week for each putative class member based on the allegation of "consistent" overtime work was "reasonable and supported by the record"); *Arreola v. Finish Line*, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (finding an assumption of one hour of unpaid overtime per week for each putative class member was reasonable based on the Plaintiff's allegation that putative class members were required to "work on a regular and consistent basis without receiving compensation for all hours worked at their regular rate…or at the applicable overtime rate"); *Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, at *5 (N.D. Cal. Apr. 22, 2013) (finding that where

a proposed class includes all employees during the class period, and the plaintiff pleads that the employer has a regular and consistent practice of violating employment laws that harmed each class member, an assumption that each putative class member experienced at least one violation per week was reasonable).

28. According to Owens Corning's records, during the period of April 19, 2018 through April 19, 2022,[1] Owens Corning employed at least 516 hourly, non-exempt employees at its Santa Clara plant. Huth Decl. ¶ 4.c. Over that time period, those 516 employees worked an aggregate of approximately 38,975 workweeks. *Id*. Based on Owens Corning's payroll records, those 516 employees made an average hourly wage of $30.88 per hour. *Id.,* ¶ 4.d. Therefore, the average overtime wage for putative class members is $46.32. *Id.,* ¶ 4.e.

29. Thus, based on Plaintiff's allegations, and for purposes of demonstrating CAFA's amount in controversy requirement only, Owens Corning bases its calculation on an assumption of one hour of overtime per workweek at the Santa Clara plant over the four-year putative class period. *See* Phan Decl., Ex. B, Compl. ¶ 14 (purporting to represent all current and former hourly-paid or non-exempt employees who reside in California).

30. Accordingly, if Owens Corning were required to pay these 516 employees, Plaintiff's overtime claim puts at least $1.8 million in controversy, exclusive of attorneys' fees, as shown and calculated below.

| **Overtime Claim Amount in Controversy** (April 19, 2018 through April 19, 2022) | |
|---|---|
| Assumed amount owed to one putative class member for one hour of overtime in one week | $46.32 |
| Estimate of workweeks in which overtime is allegedly owed | 38,975 |
| Amount in controversy for section 510 claim | $1,805,322 |

---

[1] The statute of limitations for overtime, meal break, and rest break claims is three years. Cal. Civ. Proc. Code § 338(a). However, Plaintiff also has a cause of action for unfair business practices in violation of California Business & Professions Code section 17200, which adds an additional year to the statute of limitations for Plaintiff's overtime, meal break, and rest break claims, among Plaintiff's other claims. Phan Decl., Ex. B, Compl. ¶ 118; Cal. Bus. & Prof. Code § 17208; *see also Aryeh v. Canon Bus. Sols., Inc.*, 55 Cal. 4th 1185 (2013).

### b. Plaintiff's Meal and Rest Break Claims Place More Than $2.4 Million in Controversy

31. California Labor Code section 512 provides that "[a]n employer shall not employ an employee for a work period of more than five hours per day without providing the employee with a meal period of not less than 30 minutes, except that if the total work period per day of the employee is no more than six hours, the meal period may be waived by mutual consent of both the employer and employee." Cal. Lab. Code § 512(a).  The Labor Code further states "[a]n employer shall not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second meal period may be waived by mutual consent of the employer and the employee only if the first meal period was not waived." *Id.*

32. California Labor Code section 226.7(a) provides that "[n]o employer shall require any employee to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission." Cal. Lab. Code § 226.7(a).  For any violations of California Labor Code sections 512 or 226.7, the employer "shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each work day that the meal or rest period is not provided." *Id.* at § 226.7(b).

33. Plaintiff alleges that "[d]uring the relevant time period, Defendants failed to provide all requisite uninterrupted meal and rest periods to Plaintiff and the other class members." Phan Decl., Ex. B, Compl. ¶ 20.  Plaintiff further states that he and other class members "who were scheduled to work for a period of time no longer than six (6) hours, and who did not waive their legally-mandated meal periods by mutual consent, were required to work for periods longer than five (5) hours without an uninterrupted meal period of not less than thirty (30) minutes and/or rest period." *Id.*, Compl. ¶ 62. Plaintiff also alleges that "Defendants engaged in a pattern and practice of wage abuse against their hourly-paid or non-exempt employees" and that "[t]his pattern and practice involved, *inter alia*, failing to pay them for…missed meal periods and rest breaks in violation of California law." *Id.*, Compl. ¶ 26.

34. Based on these allegations, it is reasonable to assume that Plaintiff will contend that Owens Corning allegedly failed to provide at least one meal break and at least one rest break per week to each putative class member for each week in which he or she was employed with Owens Corning.

While Owens Corning maintains that it provided meal and rest periods to Plaintiff and putative class members, district courts have routinely accepted one missed meal break and one missed rest break as a reasonable assumption for purposes of calculating an amount in controversy in light of the allegations in Plaintiff's complaint. *See, e.g.*, *Campbell*, 471 F. Appx. at 649 (affirming that an assumption of one rest break and one meal break per week was reasonable where the complaint alleged that defendant "regularly and consistently failed to provide uninterrupted meal and rest periods"); *Garza v. Brinderson Constructors, Inc.*, 178 F. Supp. 3d 906, 912 (N.D. Cal. 2016) (holding that Defendant's assumption of one meal break violation per week was reasonable where plaintiff alleged that he "regularly" missed meal breaks and that defendants maintained a "policy or practice" of both meal and rest break violations); *Arreola*, 2014 WL 6982571 at *4 (finding that pleading "regular or consistent practice" supports the assumption that every class member "experienced at least one violation once per week").

35. According to Owens Corning's records, during the period of April 19, 2018 through April 19, 2022, Owens Corning employed at least 516 hourly, non-exempt employees at its Santa Clara plant. Huth Decl. ¶ 4.c. Over that time period, those 516 employees worked an aggregate of approximately 38,975 workweeks. *Id*. Based on Owens Corning's payroll records, those 516 employees made an average hourly wage of $30.88 per hour. *Id.,* ¶ 4.d.

36. Thus, based on Plaintiff's allegations, and for purposes of demonstrating CAFA's amount in controversy requirement only, Owens Corning bases its calculation on an assumption of $30.88 for each missed meal period and for each missed rest period for 516 employees at its Santa Clara plant over the four-year putative class period. *See* Phan Decl., Ex. B, Compl. ¶ 14 (purporting to represent all current and former hourly-paid or non-exempt employees who reside in California).

37. Accordingly, if Owens Corning were required to pay these 516 employees, Plaintiff's meal and rest period claims put at least $2.4 million in controversy, exclusive of attorneys' fees, as shown and calculated below.

| **Meal and Rest Period Claims Amount in Controversy** (April 19, 2018 through April 19, 2022) | |
|---|---|
| Assumed amount owed to one putative class member for one missed meal break | $30.88 |

| | |
|---|---|
| Assumed amount owed to one putative class member for one missed meal break | $30.88 |
| Estimate of workweeks during the putative class period | 38,975 |
| Amount in controversy for sections 512 and 226.7 claims | $2,407,096 = (38,975 x $30.88) + (38,975 x $30.88)[2] |

### c. Plaintiff's Waiting Time Claim Places More Than $1.6 Million in Controversy

38. If an employer fails to pay all wages due to an employee at the time of termination or within 72 hours after resignation, as required by California Labor Code sections 201—202, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefore is commenced" for up to a maximum of 30 days. Cal. Lab. Code § 203(a).

39. Plaintiff alleges that "[d]efendants have intentionally and willfully failed to provide Plaintiff and the other class members who are no longer employed by Defendants their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ." Phan Decl., Ex. B, Compl. ¶ 85. Plaintiff further alleges "Plaintiff and the other class members are entitled to recover from Defendants the statutory penalty wages for each day they were not paid, up to a thirty (30) day maximum pursuant to California Labor Code section 203." *Id.,* Compl. ¶ 88.

40. Owens Corning denies that any such penalties are owed to Plaintiff or putative class members. However, for purposes of this jurisdictional analysis *only*, Owens Corning relies on Plaintiff's allegations that the penalties are owed. Calculation of waiting time penalties for wages owed requires the calculation of an employee's daily rate of pay, which is then multiplied by a maximum of 30 days, depending on the length of delay in receipt of wages (which Plaintiff alleges is ongoing, *see* Compl., ¶ 41), in order to determine the amount of penalty owed. *See Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998). During the three-year period prior to the filing of the Complaint,[3] at least 228 employees terminated their employment at Owens Corning's Santa Clara plant. Huth Decl. ¶ 4.f. The average

---

[2] This is a conservative analysis as it does not account for an employee's regular rate, which could be higher than the average weekly wage since the average weekly wage does not include overtime.
[3] The statute of limitations for waiting time penalties is three years. *Aubry v. Goldhor*, 201 Cal. App. 3d 399, 404 n.4 (Ct. App. 1988).

hourly rate at the time of termination for those individuals was $30.88. *Id.*, ¶ 4.d. Based on this estimate, and on Plaintiff's allegations, the amount in controversy with respect to Plaintiff's waiting time claim is more than $1.6 million, calculated as follows:

| Waiting Time Penalties Amount in Controversy (April 19, 2019 through April 19, 2022) | |
|---|---|
| Number of employees who terminated their employment after April 19, 2019 | 228 |
| Daily penalty | $247.04 ($30.88 x 8 hours) |
| Value of 30 day penalty | $7,411.20 ($247.04 x 30 days) |
| Amount in controversy for waiting time penalties for employees who terminated their employment from Owens Corning's Santa Clara Plant, based on Plaintiff's allegations | $1,689,753.60 (228 employees x $7,411.20 individual 30 day penalty) |

41. Aggregating the total amount in controversy for Plaintiff's overtime ($1,805,322), meal and rest break ($2,407,096), and waiting time penalties ($1,689,753.60) claims, totals $5,902,171.60, exclusive of attorneys' fees.

2. **Plaintiff's Request for Attorneys' Fees Results in at Least Another $1 Million in Controversy**

42. In addition, Plaintiff requests reasonable attorneys' fees and costs as to his first, second, fourth, ninth, and tenth causes of action. Phan Decl., Ex. B, Prayer for Relief ¶¶ 8, 15, 27, 51, 56. "[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees *must* be included in the assessment of the amount in controversy." *Arias*, 936 F.3d at 922 (emphasis added). Under the Ninth Circuit's well-established precedent, 25% of the common fund is generally used as a benchmark for an award of attorneys' fees. *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Barcia v. Contain-A-Way, Inc.*, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.") (quoting *Hopson v. Hanesbrands Inc.*, 2008 WL 3385452, at *4 (N.D. Cal. Aug. 8, 2008)); *Lucas v. Kors*, 2018 WL 2146403, at *12 (C.D. Cal. May 8, 2018) (collecting cases applying a 25% benchmark in CAFA wage and hour cases).

43. Here, Owens Corning established that the amount in controversy is *at least* $4,212,418 for Plaintiff's overtime and meal and rest break claims alone[4], and Plaintiff has not indicated that he will seek less than 25% of a common fund in attorneys' fees. *See* Phan Decl., Ex. B, Compl., Prayer for Relief (seeking attorneys' fees). Indeed, courts have often found attorneys' fees far greater than 25% to be reasonable in the class action context. *See, e.g.*, *In re Pacific Enterprises Securities Litigation*, 47 F.3d 373, 379 (9th Cir. 1995) (concluding the trial court's award of 33% ($4 million) in attorneys' fees was not an abuse of discretion); *see also Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, at *8 (S.D. Cal. June 1, 2010) (concluding "the request for attorneys' fees in the amount of 33.33% of the common fund falls within the typical range of 20% to 50%" awarded in class action matters and awarding $333,333.00 representing 33.33% of the settlement amount). Owens Corning denies that any such attorneys' fees are owed to Plaintiff or putative class members, but relies on Plaintiff's allegation that he will be entitled to attorneys' fees for purposes of this jurisdictional analysis.

44. Using a 25% benchmark figure for attorneys' fees for Plaintiff's allegations limited to non-exempt employees in the Santa Clara plant and violations of sections 510, 512, and 226.7 of the California Labor Code already results in estimated attorneys' fees of approximately $1,053,104.50 as calculated below. This calculation vastly undercounts the potential amount in controversy as it does not include all the claims for which Plaintiff intends to seek attorneys' fees.

| **Attorneys' Fees for Plaintiff's Overtime and Meal and Rest Break Claims** | |
| --- | --- |
| Estimated amount in controversy for alleged section 510, 512, and 226.7 violations at Owens Corning's Santa Clara Plant | $4,212,418 |
| Attorneys' fees benchmark | 25% |
| Attorneys' fees in controversy for alleged violations at Owens Corning's Santa Clara Plant | $1,053,104.50 |

---

[4] Plaintiff's waiting time penalty claims under California Labor Code section 203 are not subject to attorneys' fees.

**D. Owens Corning Has Satisfied Its Burden Under CAFA and No Exception Is Applicable**

45. In summary, Plaintiff's allegations regarding overtime under California Labor Code section 510, meal and rest breaks under California Labor Code sections 512 and 226.7, and waiting time penalties under California Labor Code section 203 places more than $5,902,171.60 in controversy. Plaintiff's request for attorneys' fees places an additional $1,053,104.50 in controversy. Therefore, the potential amount in controversy for just *four* of Plaintiff's ten causes of action is at least $6,955,276.10, including attorneys' fees. This figure underestimates the total amount placed in controversy by Plaintiff's Complaint because it is based on conservative assumptions about Plaintiff's putative class allegations by excluding (1) any potential recovery for unpaid minimum wages (Third Cause of Action), (2) any potential recovery for untimely payment of wages during employment (Fifth Cause of Action), (3) any potential recovery for inaccurate wage statements (Seventh Cause of Action), (4) any potential recovery for failure to keep requisite payroll records (Eighth Cause of Action), (5) any recovery for unreimbursed business expenses (Ninth Cause of Action), (6) any recovery from Owens Corning locations outside the Santa Clara plant where Plaintiff worked, and (7) attorneys' fees associated with any award for the above-listed causes of action.

46. Plaintiff's allegations therefore place more than the requisite $5 million in controversy. The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper under CAFA.

47. Because Owens Corning has shown that federal jurisdiction has been established over this action, Plaintiff bears the burden of proof to prove that an exception to CAFA removal applies and justifies remand. *See Serrano v. 180 Connect, Inc.*, 478 F.3d 1018, 1024 (9th Cir. 2007). Plaintiff cannot meet this burden as no exceptions apply to this action. Owens Corning reserves its right to contest and further brief the applicability of any exception to removal under CAFA that Plaintiff may identify in any motion to remand.

**III. THIS COURT HAS JURISDICTION AND REMOVAL TO THIS COURT IS PROPER**

48. Based on the foregoing facts and allegations, this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because:

1. This is a civil action that is a "class action" within the meaning of § 1332(d)(1)(B);

2. the action involves a putative class of at least 100 persons as required by § 1332(d)(5)(B):

3. the amount in controversy exceeds $5 million, exclusive of interest and costs, as required by § 1332(d)(2); and

4. at least one member of the putative class is a citizen of a state different from that of any defendant as required by § 1332(d)(2)(A).

Accordingly, this action is properly removable under 28 U.S.C. §§ 1441, 1446, and 1453.

49. The United States District Court for the Northern District of California is the federal judicial district in which the Santa Clara County Superior Court sits. This action was originally filed in the Santa Clara County Superior Court, rendering venue in this federal judicial district proper. 28 U.S.C. § 84(a); *see also* 28 U.S.C. § 1441(a).

50. True and correct copies of all process, pleadings, and orders served upon Owens Corning and/or filed in the state court, including the (a) Summons, (b) Class Action Complaint, (c) Civil Case Cover Sheet, (d) Civil Lawsuit Notice, (e) Court Order Deeming Case Complex and Staying Discovery and Responsive Pleading Deadline, and (f) Proof of Service of Summons and Class Action Complaint are attached as Exhibits A–F to the Phan Declaration filed concurrently herewith. These filings constitute the complete record of all records and proceedings in the state court.

51. Upon filing the Notice of Removal, Owens Corning will furnish written notice to Plaintiff's counsel, and will file and serve a copy of this Notice with the Clerk of the Santa Clara County Superior Court, pursuant to 28 U.S.C. § 1446(d).

Dated: May 26, 2022

By: */s/ Catherine A. Conway*
    Catherine A. Conway

Attorneys for Defendants Owens Corning Insulating Systems, LLC and Owens Corning Sales, LLC